**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**


**JOHN K. DELANEY,**

                                   **Plaintiff,**

                   **v.**                                   **CASE NO. 21-3056-SAC**


**JEFF ZMUDA, et al.,**

                                   **Defendants.**


**<u>MEMORANDUM AND ORDER</u>**

        Plaintiff John K. Delaney, a prisoner being held at the El Dorado Correctional Facility (EDCF) in El Dorado, Kansas, brings this *pro se* civil rights action under 42 U.S.C. § 1983.  He proceeds *in forma pauperis*.

        Mr. Delaney's Complaint (ECF No. 1) asserts two counts under the Eighth Amendment. Plaintiff alleges the defendants failed to protect him from the risk of contracting COVID-19 and denied him medical care for a serious medical need (infection with COVID-19) for at least 22 days.

        In support, Plaintiff includes the following detailed allegations.  Delaney states he was not provided with adequate personal protective equipment or cleaning supplies while he carried out his duties as Cell Porter, cleaning recently vacated cells, including those that had housed COVID-19 positive inmates.  Plaintiff alleges he would have received disciplinary action if he had refused to carry out his duties.  He further alleges that inmates who had tested positive with COVID-19 were knowingly housed with uninfected inmates from April through December of 2020 and were

not confined to one area.  Plaintiff states facility staff failed to wear masks or face shields.  When he filed a grievance about the failure in April of 2020, he received the response that "it has not been mandated" that staff wear face coverings and no further action would be taken.  When Plaintiff again complained about facility staff failing to wear face masks in May of 2020, staff responded they did not have masks yet and wearing them was "at the discretion of the warden."

Plaintiff filed another grievance in September of 2020 covering the following issues: housing COVID-19 positive inmates with uninfected inmates; having infected inmates eat and shower with uninfected inmates; failing to provide cellhouse porters with proper  protective equipment; refusing to establish a COVID-19 unit; correctional officers not wearing proper masks; and inadequate ventilation systems in Cellhouses A, B, C, D and E.  Warden Cline first responded by essentially asking Plaintiff to be patient and then by saying the facility was following the directions of the Kansas Department of Health and Environment.

After Plaintiff was exposed during his porter duties to several staff members who had tested positive for COVID-19, he submitted a sick call and a Form 9 on December 1, 2020, asking to be tested.  Unit Team Supervisor Buchholz responded that C-Cellhouse as a whole would be tested soon according to Medical.  C-Cellhouse was not tested until the end of December.  Plaintiff submitted a second sick call on December 2 asking to be tested.  Neither the December 1 or December 2 sick call was ever answered by Medical.

On December 4, Plaintiff began experiencing COVID-19 symptoms (headache, loss of appetite, body soreness, excessive fatigue) and submitted a third sick call asking to be tested. Medical never responded.

By December 19, staff had noticed Plaintiff's condition, and CSI Wiemers asked RN Graham to examine Delaney.  After doing so, RN Graham stated she believed he had COVID-19

2

but that she would have to ask RN Lamkin for permission to test him.  He was not tested.  On December 21, Plaintiff submitted a fifth sick call after losing his sense of taste.  At this point, he was also experiencing body aches, fatigue, diarrhea, cough, congestion, and chills.  He was seen again by Medical on December 23 but was not tested, again because they had to obtain permission from RN Lamkin first.  During this time, Plaintiff was required to continue his duties as Cell Cleaning Porter.

On December 24, Plaintiff began to have difficulty catching his breath and was dehydrated. CSI Darter called Medical, and RN Lamkin refused to come to the unit to examine Plaintiff.  At approximately 4:00 a.m., Darter called a medical emergency.  RN Lamkin responded and was hostile upon arrival.  She checked Delaney's heart rate and oxygen saturation level but refused to check his temperature or blood pressure.  She stated she was aware of the sick calls Plaintiff had submitted but determined it was not urgent unless he needed to be hospitalized.  Lamkin went on to say no one would be tested until after Christmas and just because Plaintiff reported symptoms did not mean he actually had symptoms.  In the presence of Plaintiff, Lamkin called Deputy Warden Call on speakerphone.  She told him Delaney had no symptoms and was being difficult. Plaintiff and CSI Darter interrupted and explained that he did in fact have symptoms.  Call said without symptoms, it would be after Christmas before a test was done.

Plaintiff was finally tested by Lamkin on December 26.  He tested positive and was placed under quarantine.

On December 31, Plaintiff was moved to E2 Cellhouse and placed in a cell that had not been cleaned with standing water on the floor from a broken toilet pipe.  Plaintiff was denied cleaning supplies.  The water remained on the floor until January 7, 2021.

Plaintiff submitted another sick call on January 1 asking for something to address his diarrhea and dehydration.  At a vitals check, Plaintiff told RN Gonzalez and RN Lamkin he was passing 5-7 stools per day, and despite drinking four 20-ounce bottles of water per day, he was dehydrated and dizzy whenever he stood up.  Plaintiff also reported he could not stop coughing. Gonzalez stated that they were not going to do anything for Plaintiff unless his temperature was "super high" or his oxygen saturation level was "super low", to the point he needed to be hospitalized.

Plaintiff was seen by Medical on January 2, given one dose of Diamode and told to drink more water.  On January 6, he collapsed in his cell.  CSI Turner called a medical emergency, and Plaintiff was taken to the infirmary.  Dr. Harrod in the infirmary said it was "just a panic attack," but upon arrival of an EMS unit, the paramedics determined Delaney needed to be transported to the hospital.

Plaintiff was admitted to the hospital on the COVID-19 unit in critical condition.  He was released from the hospital the next day after receiving IV fluids, antibiotics, and potassium and being started on an Albuterol inhaler.  Upon his return to EDCF, Dr. Harrod sent Plaintiff back to the COVID Management Unit with a promise of starting him on "Boost" to keep him hydrated. Plaintiff never received any Boost.  He continued to have diarrhea and dehydration issues as of January 8 at least.  He was seen by Medical on January 19 for ongoing COVID-related issues and prescribed potassium pills, antibiotics, Prednizone, and an Albuterol inhaler to keep with him.  On February 11, he submitted a sick call because he was continuing to have digestive issues, cough, and loss of taste and smell.

Plaintiff names as defendants Jeff Zmuda, Secretary of the Kansas Department of Corrections; Sam Cline, Warden; Dale Call, Deputy Warden; Matthew Moore, Deputy Warden;

and Nancy Lamkin, RN-Infectious Disease Control.  Mr. Delaney seeks a declaratory judgment stating Defendants Zmuda, Cline, Call and Moore (1) violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to adequately protect him from the risk of contracting COVID-19; (2) failed to put in place adequate policies to protect inmates and staff; (3) failed to provide adequate protective equipment and supplies to sanitize cells and living areas; and (4) failed to properly address Plaintiff's complaints.[1]  Plaintiff further seeks a declaratory judgment that Defendant Lamkin violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with adequate medical care for a serious medical need, which led to him being hospitalized.  In addition, Plaintiff requests compensatory damages of $10,000 and punitive damages of $50,000 from each defendant.

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the EDCF.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate officials to prepare and file a *Martinez* Report.

**IT IS THEREFORE ORDERED BY THE COURT** that:

(1)     The Clerk of Court shall serve Defendants under the e-service pilot program in effect with the Kansas Department of Corrections ("KDOC").

(2)     Upon the electronic filing of the Waiver of Service Executed pursuant to the e-service program, KDOC shall have **sixty (60) days** to prepare the *Martinez* Report.  Upon the filing of that report, the AG/Defendants shall have an additional **sixty (60) days** to answer or otherwise respond to the Complaint.

---

[1] Delaney also includes in the Complaint allegations about Deputy Warden Moore providing his emergency contact with incomplete or inaccurate information about Delaney's condition.  He does not explain how this violated his constitutional rights under the Eighth Amendment.

(3)     Officials responsible for the operation of the El Dorado Correctional Facility are directed to undertake a review of the subject matter of the complaint:

      a.     To ascertain the facts and circumstances;

      b.     To consider whether any action can and should be taken by the institution to resolve the subject matter of the complaint; and

      c.     To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this complaint and should be considered together.

(4)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  The KDOC must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff. Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)     Authorization is granted to the officials of the El Dorado Correctional Facility to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)     No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answers or responses to the Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, KDOC may move for termination from this action.

6

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

**DATED:  This 5th day of March, 2021, at Topeka, Kansas.**


s/  Sam A. Crow
**SAM A. CROW**
**U.S. Senior District Judge**